UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAY CAIDOR,

                              **Plaintiff,**

              v.                                      5:03-CV-1163
                                                            (FJS/GJD)

FEDEX HOME DELIVERY,

                              **Defendant.**
_____

**APPEARANCES**                                              **OF COUNSEL**

**JAY CAIDOR**
Syracuse, New York 13204
Plaintiff *pro se*

**JACKSON LEWIS, LLP**                            **ANTHONY J. DiORIO**, ESQ.
One North Broadway
White Plains, New York 10602
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff alleges a racial employment discrimination claim pursuant to 42 U.S.C. § 1981 against Defendant FedEx Home Delivery.  Currently before this Court is Defendant's motion for summary judgment.  Defendant argues that it is entitled to summary judgment for the following reasons: (1) Plaintiff has failed to set forth facts which create a genuine issue for trial; (2) Plaintiff has failed to demonstrate a *prima facie* case of discrimination under 42 U.S.C. § 1981; and (3), even if Plaintiff met his *prima facie* burden, Defendant had numerous legitimate, nondiscriminatory reasons for not hiring Plaintiff, and Plaintiff has failed to demonstrate that

these reasons were pretextual.

## II. BACKGROUND

FedEx Ground provides package delivery services for commercial and residential customers. *See* Defendant's Statement of Material Facts at ¶ 1. In January 2001, FedEx Ground launched FedEx Home Delivery ("Defendant"), a separate company, in the Syracuse area. *See id.* at ¶ 2. Defendant initially established five routes in the Syracuse area, which it intended to award to qualified independent contractors. *See id.* at ¶ 4. Defendant required the independent contractors to lease vans and purchase uniforms and other materials necessary to operate the routes. *See id.* at ¶ 6.

Defendant contracted the initial five routes in the Syracuse area to Caucasian drivers. *See id.* at ¶ 8. Approximately six to eight months after the Syracuse location opened, Defendant created a sixth and contracted that route to an African-American, Kevin Stevens. *See id.* Mr. Stevens hired a driver, Tyrone Lofton, who was African-American, to assist him with the route. *See id.* at ¶ 9.

Gregory Robinson, an African-American, was the first Senior Manager assigned to Defendant's Syracuse branch, and he solicited the drivers for these routes. *See id.* at ¶¶ 10-14. Defendant required that all drivers possess and maintain clean driving records because driving was the primary responsibility for the position. *See id.* at Exhibit "F."

Plaintiff, an African-American male with a bachelors degree in economics, first applied for a contract driver position with Defendant in December 2000 at an employment conference that Defendant hosted. *See id.* at ¶ 25. Mr. Robinson was the first manager to meet with Plaintiff

and performed the pre-screening process. *See id.* at ¶ 26.

Pursuant to Defendant's uniform pre-screening process, Mr. Robinson requested Plaintiff's driving record from the New York State Department of Motor Vehicles ("DMV"). *See id.* at ¶ 31. Upon receipt of this information, Mr. Robinson informed Plaintiff that he had too many moving violations to be considered for the position and that to process his application further would be fruitless. *See* Transcript of Deposition of Jay Caidor dated May 8, 2006 ("Caidor Tr."), at 61, 63; Affidavit of Gregory Robinson, sworn to October 13, 2006 ("Robinson Aff."), at ¶ 9. Plaintiff contends that Mr. Robinson told him that it would take "three to six months to clear up his driving record" and that he should reapply at that time. *See* Caidor Tr. at 61, 66. Mr. Robinson, however, denies that he ever made such assertions. *See* Defendant's Statement of Material Facts at ¶ 36.

On or about August 29, 2001, Plaintiff contacted Mr. Robinson and sought to submit a new application to Defendant for a contract driver position. *See id.* at ¶ 40. Upon receiving the updated driving record from the DMV, Mr. Robinson learned that, not only had Plaintiff's driving record not been "cleared up," but that Plaintiff had received an additional moving violation on February 15, 2001, shortly after he first applied for the position. *See* Affidavit of Christopher Ross, sworn to October 12, 2006 ("Ross Aff."), at Exhibit "A." Due to the additional moving violation, as well as Plaintiff's already poor driving record, Mr. Robinson did not further process Plaintiff's second application. *See* Defendant's Statement of Material Facts at ¶ 49.

In addition to the misrepresentation that his driving record had been "cleared up," Plaintiff's second application contained several other factual inaccuracies. *See id.* at ¶ 50. For example, despite having already applied with Defendant for employment, Plaintiff responded

"No" to an application query regarding whether he had ever applied to, been employed by, or been contracted by Defendant. *See* Ross Aff. at Exhibit "A." Further, the application inquired whether the applicant had ever been convicted of a misdemeanor or a felony to which Plaintiff responded "No," despite his 1990 misdemeanor conviction for resisting arrest. *See id.* Moreover, the application asked whether Plaintiff had "ever been convicted or forfeited bond or collateral for violations of motor vehicle laws or ordinances in any vehicle, other than parking, in the past 3 years." *See* Caidor Tr. at 148-49. Plaintiff responded "No" to this inquiry, despite the fact that he had been convicted of moving violations in February 2001, August 1999, May 1999, and September 1998. *See id.* at 150; Ross Aff. at Exhibit "A."[1] Plaintiff asserted that his failure to properly answer this question was due to a simple misreading. Caidor Tr. at 150. Finally, when asked on the application if he had any motor vehicle accidents in the past three years, Plaintiff responded "No," despite the fact that he admittedly had an accident on April 27, 1999. *See id.* at 152-53.

On or about September of 2002, Plaintiff filled out another application for the independent contractor position. *See id.* at 154. This application contained the same factual misstatements as the previous one. *See id.* at 155-56. Most significant, Plaintiff once again responded that he had never been convicted of a misdemeanor. *See id.* at 155. Plaintiff explained that he responded "No" to this inquiry because he was unaware that resisting arrest was a misdemeanor. *See id.* at 141-44. Onondaga County, however, had terminated Plaintiff for falsifying his employment application for failing to disclose this misdemeanor conviction on

---

[1] Plaintiff testified at his deposition to three additional traffic violations in May of 1998, May of 1997, and January of 1998, two of which occurred within three years of Plaintiff's first application submission. *See* Caidor Tr. at 150.

-4-

April 17, 2002 – several months prior to Plaintiff's submission of his September application to Defendant. *See* Defendant's Memorandum of Law at 17; *Caidor v. Onondaga County*, 5:03-CV-00031, 2006 U.S. Dist. LEXIS 64664 (N.D.N.Y. Sept. 11, 2006). Finally, during the third application process, Plaintiff refused to fill out the required general credit check form, the DMV authorization, and the Business Reference Form, which Plaintiff believed he should only fill out and submit if Defendant offered him the position. *See* Defendant's Statement of Material Facts at ¶¶ 81-82; Caidor Tr. at 161-63.

On or about February 18, 2003, Plaintiff submitted a fourth application for an independent contractor position. *See* Ross Aff. at Exhibit "C." In this application, Plaintiff, for the first time, responded "Yes" when asked if he had ever been convicted of a misdemeanor and when asked if he had ever applied for employment with Defendant. *See id.*; Caidor Tr. at 171-72. According to Plaintiff, he now responded "Yes" to the misdemeanor question because he first learned that the offense in question was a misdemeanor in 2003. *See* Caidor Tr. at 172.

### III. DISCUSSION

**A.    Standard of review**

"A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quoting *Donahue v. Windsor Locks Board of Fire Commissioners*, 834 F.2d

at 58) (other citation omitted). Furthermore, in assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw inferences in favor of the nonmoving party. *See id.* at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted).

When a plaintiff is proceeding *pro se*, the court must review the *pro se* plaintiff's supporting papers liberally and "interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quotation omitted); *see also Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001). A *pro se* plaintiff's "bald assertions," however, without evidentiary support will not defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991); *Columbo v. United States Postal Serv.*, 293 F. Supp. 2d 219, 222 (E.D.N.Y. 2003) (concluding that "pro se status '"does not exempt a party from compliance with relevant rules of procedural and substantive law"'" (quotation omitted)); *Saldana v. Local 32B-32J Serv. Employees Int'l Union*, No. 03 Civ. 1853, 2005 WL 66895, *2 (S.D.N.Y. Jan. 12, 2005) (finding that "[e]ven a pro se plaintiff, however, cannot withstand a motion for summary judgment by relying merely on the allegations of the complaint. . . . Rather, when confronted with evidence of facts that would support judgment in the defendant's favor as a matter of law, the plaintiff must come forward with evidence in admissible form that is capable of refuting those facts" (citations omitted)).

**B.     Plaintiff's discrimination claims under 42 U.S.C. § 1981**

Section 1981, which applies to private as well as state actors, bars certain racially motivated and intentionally discriminatory acts in making or enforcing contracts. *See Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 1994) (citations omitted). When assessing a discrimination claim under Section 1981, this court treads the well-worn path laid down in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252 (1981). Under this framework, the plaintiff has the initial burden of establishing, by a preponderance of the evidence, a *prima facie* case of discrimination. *See Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995) (citations omitted). Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to show that it did not hire the plaintiff for a legitimate, nondiscriminatory reason. *See Burdine*, 450 U.S. at 254-55. If the defendant carries this burden, the presumption of discrimination that the *prima facie* case created "drops out of the picture," *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993) (citation omitted), and the plaintiff must then prove, by a preponderance of the evidence, that the reasons that the defendant offered were a pretext for discrimination, *see McDonnell Douglas*, 411 U.S. at 802. The plaintiff may show this either by presenting additional evidence that "the employer's proffered explanation is unworthy of credence," *Burdine*, 450 U.S. at 256 (citation omitted), or by relying on the evidence comprising the *prima facie* case, without more, *see Hicks*, 509 U.S. at 510-11.

### *1. Plaintiff's prima facie case*

In order to establish a *prima facie* case, the plaintiff must show

> "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications."

*Burdine*, 450 U.S. at 253 n.6 (quoting *McDonnell Douglas*, 411 U.S., at 802, 93 S. Ct., at 1824). "The burden of establishing a prima facie case of disparate treatment is not onerous," *Burdine*, 450 U.S. at 253, and has, in fact, been characterized as a "*de minimis*" burden on the plaintiff. *See Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988) (citation omitted). Although this burden is not an onerous one, mere "naked allegations" of racial discrimination are insufficient to defeat a motion for summary judgment. *See Yusuf*, 35 F.3d at 714 (citation omitted).

There is no question that Plaintiff has established the first element of his *prima facie* case: he is African-American. Plaintiff has not shown, however, that he was qualified for the job or that Defendant continued to seek applications from non-African-Americans who had the same qualifications as Plaintiff.

With regard to the other elements of his *prima facie* case, Plaintiff asserts that Defendant hired Caucasian drivers who were no more qualified than he and that Defendant denied him the position because he was "a black male." *See, generally*, Complaint.

Despite these assertions, Plaintiff has offered no direct or circumstantial evidence to substantiate his claims. As Plaintiff has admitted, he has only provided the Court with his own subjective beliefs. *See* Caidor Tr. at 89-92, 97; Plaintiff's Rule 56 & Local 7.1 Response to

Defendant's Statement of Material Facts at ¶¶ 92-110.[2]  Such suspicions of racial discrimination, without more, are insufficient to establish a *prima facie* case of discrimination.  *See Fraser v. Doubleday & Co., Inc.*, 587 F. Supp. 1284, 1287 (S.D.N.Y. 1984) (granting the defendants' motion for summary judgment with respect to the plaintiffs' Section 1981 claim because the

---

[2] The following is a relevant excerpt from the transcript of Plaintiff's deposition:

Q. How would you check and do research that they were only hiring whites?

A. I was talking to the drivers that quit.

* * *

Q. I thought you testified earlier you never spoke about African Americans with these people?  Didn't you testify earlier today that you would speak to them about buying the route and buying the van?

A. I did speak to them about buying the route and van.

Q. And you never spoke to them about African Americans?

A. I already knew.

* * *

Q. And again, how does that lead you to make the allegation that when they advertised for independent contractors they were seeking whites only?  How do you get to that conclusion from everything you just told me?

A. That's what I believe.

Q. It's just a belief?

A. From what I observed.

Q. So it's just a belief?

A. In my observations.

*See* Caidor Tr. at 89-92.

plaintiffs failed to present any "evidence of racially discriminatory motivation beyond mere suspicion or surmise. . . . The fact that plaintiffs are black, which in essence constitutes the entirety of plaintiffs' case on the racial discrimination claim, does not lead to an inference that defendants' conduct was racially motivated." (citing *Gatling v. Atlantic Richfield Company*, 577 F.2d 185, 188 (2d Cir. 1978), cert. denied, 439 U.S. 861, 99 S. Ct. 181, 58 L. Ed. 2d 169 (1979)) (other citation and footnote omitted).

      Moreover, although Plaintiff contends that he was qualified for the independent contractor position, there is nothing in the record to support this assertion. Defendant's pre-screening application provides, in relevant part, that an applicant is ineligible for the contractor position if he has a "maximum of four moving violations in any commercial or private vehicle in the past six months." *See* Plaintiff's Memorandum of Law at Exhibit "E." The document further provides that the applicant may have a "maximum of one 'at-fault' accident of any type, major or minor, in any commercial or private vehicle and three moving violations in any commercial or private vehicle, in the past 36 months." *See id.* These requirements constitute the company's minimum requirements for consideration for employment. *See id.*

      Plaintiff's DMV record established that Plaintiff had moving violation convictions on February 15, 2001, November 11, 1999, July 20, 1999, May 25, 1999, December 18, 1998, August 11, 1998, January 6, 1998, and a motor vehicle accident on April 27, 1999. *See* Ross Aff. at Exhibit "A." Not only did these violations make him automatically ineligible under Defendant's pre-screening requirements, but they also demonstrate that Plaintiff clearly did not have a "clean driving record" as Defendant required. Thus, Plaintiff has failed to prove that he was in fact qualified for the position he sought. *See Williams v. Port Auth. of N.Y. & N.J.*, 880 F.

-10-

Supp. 980, 990 (E.D.N.Y. 1995) (dismissing plaintiff's claim for racial discrimination because plaintiff failed to establish his objective qualifications for the position he sought).

Finally, Plaintiff has failed to prove that Defendant continued to seek applicants who did not meet its pre-screening requirements or filled the position with someone who had a driving record similar to Plaintiff's. Plaintiff's failure to establish these two elements of his *prima facie* case make summary judgment appropriate. *See Philippeaux v. County of Nassau*, 921 F. Supp. 1000, 1009 (E.D.N.Y. 1996) (dismissing the plaintiff's § 1981 claim because he failed to meet the objective standards for employment and failed to demonstrate that the defendant deviated from the practice of only hiring those who met those standards).[3]

### 2. *Defendant's nondiscriminatory reasons for its decisions*

Even if the Court assumed, for the sake of argument, that Plaintiff established his *prima facie* case, Defendant has come forward with several legitimate, nondiscriminatory reasons for its decision not to hire Plaintiff.

With respect to the first two applications, Defendant established, and Plaintiff admitted to, a number of traffic violations as well as a vehicular accident which rendered Plaintiff automatically unqualified for the job pursuant to Defendant's objective pre-screening process. *See* Robinson Aff. at ¶¶ 9, 10, 12, 14; Caidor Tr. at 150-51. Defendant included the requirement that applicants possess a "clean driving record" in each advertisement for employment, *see*

---

[3] Plaintiff also failed to submit all of the information that Defendant requested in the third application, including the credit check form, the DMV authorization, and the Business Reference Form. *See* Defendant's Statement of Material Facts at ¶¶ 81-82; Caidor Tr. at 161-63; Ross Aff. at Exhibit "B." Plaintiff has failed to show why such a purposeful disregard for Defendant's application requirements did not render Plaintiff unqualified for the job or that Defendant hired other applicants who refused to submit such information.

Defendant's Memorandum of Law at Exhibit "F;" and Defendant's pre-screening application sets forth the exact violations which will automatically preclude an applicant from employment, *see* Plaintiff's Memorandum of Law at Exhibit "E."

As already noted, Plaintiff's DMV record rendered him clearly ineligible for employment pursuant to the pre-screening for both the December 2000 and August 29, 2001 applications due to Defendant's three-year look-back policy for traffic violations. Such a clear disqualification, based on objectively fair guidelines, is clearly a legitimate, nondiscriminatory reason for Defendant's action. *See, e.g.*, *Williams*, 880 F. Supp. at 990 (dismissing *pro se* plaintiff's action for racial discrimination because he failed to establish that the defendant's nondiscriminatory reason was pretextual, i.e., the plaintiff's failure to pass his qualifying exam).

Further, when he submitted his second application on August 29, 2001, Plaintiff again responded "No" to the query regarding whether he had received any traffic violations in the past three years. *See* Ross Aff. at Exhibit "A." Plaintiff had, however, received an additional traffic violation on February 14, 2001. *See id.* Notwithstanding the fact that Plaintiff still did not qualify for the position he sought because of his numerous traffic violations, he now misrepresented a dispositive fact to his potential employer. Plaintiff also stated on his second and third applications that he had never before applied for this position or any position with Defendant. *See id.* at Exhibits "A"-"B." Such misrepresentations provided Defendant with another legitimate, nondiscriminatory reason for denying Plaintiff's application and any subsequent application he submitted. *See, e.g.*, *Wrenn v. New York State Office of Mental Health*, 771 F. Supp. 594, 599 (S.D.N.Y. 1991), *aff'd,* 962 F.2d 1 (2d Cir. 1992) (dismissing the plaintiff's § 1981 claim because the plaintiff had misrepresented his employment status on his

resume and this constituted a legitimate, nondiscriminatory reason).

Finally, Plaintiff's refusal to submit all of the documents requested in the September 2002 application, as well as his misrepresentation of facts in this application, provided Defendant with nondiscriminatory reasons for its action. *See* Ross Aff. at ¶¶ 7-8.[4]

### *3. Plaintiff's showing that Defendant's nondiscriminatory reasons are a pretext for discrimination*

Since Defendant met its burden to produce one or more legitimate, nondiscriminatory reasons for its conduct, Plaintiff must demonstrate that these reasons were a pretext for discrimination. Plaintiff has not satisfied this burden.

As discussed above, other than his own general and unsubstantiated accusations, Plaintiff has presented no evidence that would allow a rational finder-of-fact to infer that Defendant discriminated against him on the basis of his race. *See Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 19 (2d Cir. 1995) (noting that the plaintiff "was not entitled to trial based on his speculative assertions on matters as to which he admitted he had no knowledge and no evidence"); *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997).

Plaintiff makes no attempt to show that Defendant's reliance on his poor driving record was a pretext for discrimination or that Defendant somehow applied its uniform pre-screening policy in a discriminatory manner. Plaintiff also failed to address how Defendant's reliance on Plaintiff's misrepresentations, innocent or otherwise, constituted a pretext for discrimination.

---

[4] Defendant further contends that, starting in 2002 and continuing through March of 2003, Plaintiff attempted to bribe two of its employees if they assisted him in obtaining the independent contractor position. *See* Robinson Aff. at ¶¶ 17-18; Ross Aff. at ¶¶ 16, 19. Such allegations, if relied on in good faith, may also be legitimate, nondiscriminatory reasons for Defendant's denial of Plaintiff's 2002 application.

-13-

Furthermore, Plaintiff's conclusory statements as to Defendant's intent are clearly insufficient to sustain a finding of intentional discrimination or even to create a genuine issue of fact as to Defendant's intentions.

In sum, Plaintiff's claims against Defendant constitute nothing more than his subjective belief that Defendant discriminated against him. His conclusory allegations, unsupported by any direct or circumstantial evidence, fall far short of establishing a *prima facie* case of discrimination. Further, Plaintiff has failed, in any way, to show that the multitude of legitimate, nondiscriminatory reasons Defendant offered to explain why it did not hire Plaintiff were actually just a pretext for discrimination. Accordingly, the Court grants Defendant's motion for summary judgment.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: September 11, 2009
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge